## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

EDGAR LEE GUINTHER                                                                    PLAINTIFF
ADC # 100017

v.                                        4:23CV00822-BRW-JTK

JOE PROFIRI, et al.                                                                  DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson.    Any party may file written objections to all or part of this Recommendation.    If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.    By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.    Introduction

Edgar Lee Guinther ("Plaintiff") is in custody at the Maximum Security Unit ("MSU") of the Arkansas Division of Correction ("ADC").    Plaintiff filed a pro se complaint pursuant to 42 U.S.C. § 1983 against Secretary Joe Profiri,[1] Lieutenant Goodloe, and Sergeants Cliord and Burnett (collectively, "Defendants") in their official capacities.    (Doc. No. 2 at 1-3).    The Court must screen Plaintiff's claims pursuant to the Prison Litigation Reform Act ("PLRA").

---

[1] Joe Profiri is substituted in place of Solomon Graves pursuant to Rule 25 of the Federal Rules of Civil Procedure.

## II.    Screening

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a).   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.    28 U.S.C. § 1915A(b).   See also 28 U.S.C. § 1915(e) (screening requirements).

An action is frivolous if "it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).    Whether a plaintiff is represented by counsel or is appearing <u>pro se</u>, his complaint must allege specific facts sufficient to state a claim.    See <u>Martin v. Sargent</u>, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."    <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

In reviewing a <u>pro se</u> complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction.    <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).    The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.    <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992).

## III.    Discussion

### A.    Plaintiff's Complaint

Plaintiff's claims in this case arise from the confiscation of 13 bags of his personal property, including legal materials, and the subsequent alleged inadequate access to those materials that are kept in storage.   (Doc. No. 2).

From December 2019 until March 2022, Plaintiff was housed in a single man cell.  (Id. at 22).  During the time Plaintiff was housed alone, the amount of property he had in his cell—more than 13 laundry bags full of legal material in additional to other property—was never an issue. (Id. at 4, 22).

But Plaintiff's stay in a single-man cell came to an end; he and his property were moved into a barracks.  On July 14, 2022, Plaintiff was housed in 11 Barracks.  (Id. at 4).  On that day, Defendants Goodloe, Cliord, and Burnett came to Plaintiff's bunk in the Barracks and told Plaintiff he had too much property in his area.  (Id.).  They also told Plaintiff they would take his property and store it in the property room, and that he could have access to his property a little at a time as needed.  (Id.).  Defendants Goodloe, Cliord, and Burnett took the five clear property bags that had contained Plaintiff's legal material, but allowed Plaintiff to retain the material itself.  (Id.). Plaintiff put the legal material in 13 laundry bags.  (Doc. No. 2 at 4).  Defendants Goodloe, Cliord, and Burnett advised Plaintiff that once they inventoried Plaintiff's property, Plaintiff would be provided an F-401 Confiscated Form—Area or Person ("F-401 Form") and Inmate Personal Inventory Record F-841-1 Form ("F-841-1 Form").  (Id.).

The following day, July 15, 2022, Defendant Burnett retrieved the 13 laundry bags full of Plaintiff's legal material—or legal property, as Plaintiff sometimes calls it—from his bunk area. (Id. at 4, 46).  Plaintiff's legal property included material Plaintiff was using to assist other inmates with legal issues.  (Id. at 20, 25).  Plaintiff was allowed to keep only what would fit into his property box that was attached to his bunk.  (Id. at 4).  Plaintiff was provided neither an F-401 Form nor an F-841-1 Form.  (Id.).

Plaintiff complains about not receiving the proper forms when his property was confiscated.  (Doc. No. 2 at 5).  And he says he has not be granted access to his property "as

agreed per policy." (Id.).  According to policy, an inmate may access stored legal material by using the inmate request system, a swap-out system through which an inmate could surrender property currently in his possession in exchange for a proportionate amount of property in storage. (Id. at 21-22, 91).  Plaintiff says the swap-out system was ineffective because he "was never able to swap-out materials in an expedient enough manner to allow Plaintiff to work on the cases those legal materials were for." (Id. at 22).  And he complains that because he must swap-out property, he is prevented from obtaining access to some legal material.  (Id.).  Further complicating matters is the fact that Plaintiff's legal materials "must have been put in multiple property rooms around Tucker Max, not only in the property office, which inherently and logistically limits when, what, and how [Plaintiff] can receive his legal materials at any given time." (Id.).

On May 5, 2023, Defendant Burnett returned to Plaintiff two of the 13 bags of legal material that were taken on July 15, 2022.  (Doc. No. 2 at 5).  According to Plaintiff, Defendant Burnett informed Plaintiff "that this was all she could find of [Plaintiff's] in her storage." (Id.).

Plaintiff leans on ADC and MSU policies, rules, and regulations in making his argument that the taking of his legal material was unlawful.

Arkansas State Board of Corrections Administrative Rule 841 ("Rule 841") describes the procedures used to process inmate property control.  (Id. at 108).  Rule 841 defines personal property as "[i]tems which are purchased by or for an inmate and/or given to an inmate which are authorized to be retained, within limits as posted in the unit/center of assignment, on an inmate's person, or in living or storage area." (Id.).  Rule 841 defines state issue property as "[i]tems which are issued to an inmate for his or her personal use and which may be retained within a reasonable amount by the inmate on his or her person, or in the living area." (Id.).

Arkansas Board of Correction and Community Punishment Administrative Regulation 401 addresses the disposal of excess personal property confiscated as contraband, except legal materials.  (Id. at 107).

ADC Administrative Directive 20-08 ("AD 20-08") governs the possession of property by inmates.  (Doc. No. 2 at 102).[2]  AD 20-08 defines legal materials as "[p]leadings and resource documents such as case law, court rules, statutes, transcripts, notes, or legal forms."  (Id.). AD 20-08 defines inmate personal property as "[a]ll items of approved property belonging to an inmate."  (Id.).  Excessive property is defined as "[p]roperty possessed by an inmate over and above that permitted by this policy."  (Id.).  AD 20-08 defines property box as "[a] storage box provided by the Division for inmate property."  (Id.).

MSU Policy 9.27.0, titled Inmate Property Control, addresses legal materials.  (Id. at 91). The policy provides:

   1.    An inmate may retain such legal materials as are necessary for pursuing litigation and preparation of appeals provided the quantity of those materials can be stored in the property box provided.

   2.    Articles not related to active litigation or appeals may be stored for a maximum of forty-five (45) days.   The inmate is responsible for the disposal of those materials through visitation or the U.S. Mail at the inmate's expense.

   3.    Inmates may access stored legal materials by using the inmate request system.

   4.    At the time of transfer the UPCO shall inquire of the inmate being transferred whether that inmate has legal work belonging to any other inmate.   If so, those legal materials must be returned to that inmate.

 (Doc. No. 2 at 91).

---

[2] Multiple pages of AD 20-08 are missing. Plaintiff attached only certain pages of the Directive.

Plaintiff claims that ADC policies do not address how to process an inmate's legal property. (Id. at 19).   He takes issue that Rule 841 does not contain a separate definition of legal property. (Id.).   Plaintiff also complains that AD 20-08 does not limit the amount of property an inmate may possess to one box, whereas 9.27.0 does.   (Id. at 6, 26).   According to Plaintiff, the policies and practices of the ADC as applied to the confiscation of his legal property are unconstitutional and violate state law.   (Id.).   In particular, Plaintiff claims his right to access the court has been violated, along with his due process rights and right to free speech and association.   Plaintiff brings the state law claims of conversion, replevin, and trespass to chattels.

### B.    Claims on Behalf of Others

Plaintiff claims that when his "legal materials are taken from him, harm results directly to himself and to other individuals that he may attempt to assist."   (Doc. No. 2 at 25).   As the Court understands Plaintiff's Complaint, he is a jailhouse lawyer.

"[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm."   Hollingsworth v. Perry, 570 U.S. 693, 704 (2013).   See also 42 U.S.C. § 1983 (establishing liability "to the party injured").   To the extent a plaintiff alleges that a defendant's actions harmed others, the plaintiff generally lacks standing to bring that claim.   Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" (internal citation omitted)).

There are limited exceptions to the standing requirement.   For example, if another inmate lacks sufficient access to the courts to bring a claim on his own behalf, a jailhouse lawyer may have standing to bring that claim on behalf of the other inmate.   See Gassler v. Rayl, 862 F.2d 706, 707-08 (8th Cir. 1988) (internal citation omitted).   But Plaintiff's Complaint does not

establish that other inmates are unable to bring claims on their own behalf using the resources available at the Maximum Security Unit; he does not allege there are no "reasonable, alternative means of legal assistance" available to other inmates.    Munz v. Nix, 908 F.2d 267, 269 n.3 (8th Cir. 1990).    Plaintiff acknowledges the Unit has a law library.    And the librarian provides inmates with legal forms, though Plaintiff claims the space on the forms is not sufficient to articulate a claim.    Still, these allegations are speculative and do not establish inadequate alternative resources. See Bear v. Kautzky, 305 F.3d 802, 804-05 (8th Cir. 2002); Goff v. Nix, 113 F.3d 887, 890 (8th Cir. 1997); Munz, 908 F.2d at 269 n.3.    As such, Plaintiff does not have standing to bring claims on behalf of other prisoners.

Further, pro se litigants are not authorized to represent the rights, claims, and interests of other parties in any cause of action.    Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); cf. Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity.").

To the extent Plaintiff brings seeks to protect the rights of other inmates, he may not do so.

### C.    Right to Access the Court

Plaintiff claims that the confiscation of his legal materials resulted in the violation of his right to access the courts.    Plaintiff, like all prisoners, has "a constitutional right of access to the courts," which includes the ability to seek a new trial, release from confinement, or the vindication of constitutional rights.    Bounds v. Smith, 430 U.S. 817, 824, 827 (1977) (overruled on other grounds).    To state a First Amendment claim, a plaintiff must allege actual injury – in an access to the courts claim the injury would be "the hindrance of a nonfrivolous and arguable meritorious

underlying legal claim" Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).  To prove actual injury, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (citing Lewis v. Casey, 518 U.S. 343, 353 (1996)).  Speculative injuries are insufficient; the inmate must identify a specific injury related to the alleged deprivation.  Hartsfield, 511 F.3d at 833; Lewis, 518 U.S. at 351.  When considering an access to the courts claim, courts must first consider whether the plaintiff suffered an actual injury because actual injury "concerns the prisoner's standing to bring a claim, and thus [the court's] jurisdiction."  Kautzky, 494 F.3d at 680.

As to actual injury, Plaintiff claims other inmates were harmed when his legal materials were taken from him.  As set out above, Plaintiff may not seek to protect the rights of others in this lawsuit.  He cannot establish actual injury based on harm to another inmate; the injury must have been personal to Plaintiff.

Plaintiff also claims he was harmed because he was not able to effectively litigate his "federal habeas petition and related proceedings" as his legal materials have been in storage since July 15, 2022.  (Doc. No. 2 at 28).  The public record reveals that Plaintiff filed a Petition for Writ of Habeas Corpus in this Court on January 1, 2022.  Guinther v. Payne, 4:22-cv-0052-JM (E.D. Ark.).  Judgment was entered in Plaintiff's habeas case on May 3, 2022—roughly two months before Plaintiff's legal materials were confiscated.  As such, Plaintiff cannot establish actual injury in connection with his habeas case.

Plaintiff asserts that "[t]he taking of his legal files caused him to be unprepared and not able to participate in a scheduled jury trial."  (Doc. No. 2 at 23).  Public state court records do not indicate that Plaintiff had ongoing litigation any time between July 15, 2022—when Plaintiff's legal material was confiscated—to present.  Instead, it appears that Plaintiff's last state case

concluded in 2018.[3]    Plaintiff appears to be referring to <u>Guinther v. Barker</u>, 5:19-cv-00110-BRW (E.D. Ark. filed April 2, 2019).    That case was scheduled for trial on June 7, 2023.    <u>Id</u>. at Doc. No. 148.    But Plaintiff was appointed counsel in that case on November 22, 2021.    <u>Id</u>. at Doc. No. 133.    And Plaintiff, through counsel, asked "that the parties [be ordered] to mediate . . . prior to a final hearing date."    <u>Id</u>. at Doc. No. 150.    The case ultimately settled.    <u>Id</u>. at Doc. No. 157. It is unclear how Plaintiff was prevented from participating in a jury trial in a case that settled.    It is also unclear how Plaintiff suffered actual injury in a case as a result of the confiscation of Plaintiff's legal material where he was represented by counsel and achieved a settlement in his favor.

According to the public record, the case at hand is Plaintiff's only active state or federal litigation.

Plaintiff argues he cannot properly "prepare his post-conviction and/or Executive Clemency without his paperwork" and explains that his next parole eligibility review date is in November, 2024—the first since November 2016.    (Doc. No. 2 at 38, 23).    That due date is 14 months in the future.    Plaintiff does not provide information about the material he needs to prepare and what of that material he alleges he is being denied timely or outright access to.    Any harm Plaintiff pleads here is speculative and insufficient to establish actual injury.

Plaintiff has not pled sufficient fact to establish actual injury.    As such, Plaintiff lacks standing and the Court lacks jurisdiction over Plaintiff's access to the Court claims.

---

[3]https://caseinfo.arcourts.gov/cconnect/PROD/public/ck_public_qry_cpty.cp_personcase _details_idx (last visited Sept. 8, 2023).

### B.        Freedom of Speech and Association

Plaintiff's freedom of speech and association claims (Doc. No. 2 at 23-27) are based on Plaintiff's alleged lack of access to the courts and should be analyzed accordingly.   Plaintiff says the ADC does not provide assistance to prisoners "from those trained in the law." (Id. at 24). Plaintiff also says the legal forms that are provided by the law library do not contain enough space to articulate a claim. (Id.).   Plaintiff argues that when his "legal materials are taken from him, harm results directly to himself and to other individuals . . . that he may attempt to assist." (Id.). But Plaintiff does not identify any actual injury arising from these claims.   As such, Plaintiff lacks standing to pursue these claims and this Court lacks jurisdiction to consider them.

### C.        Unlawful Policy or Practice

Plaintiff maintains the property policy is vague because it does not "define legal vs. personal property." (Doc. No. 2 at 25).   Plaintiff claims that as a result, "any practice of enforcement of it is unconstitutional as applied to Plaintiff."   Further, Plaintiff takes issue that all property must fit into one box.   (Id. at 26).   Plaintiff alleges that the policies, as applied, impeded his ability to access the courts and thus are unlawful.   (Id. at 27).

Rule 841 defines personal property as "[i]tems which are purchased by or for an inmate and/or given to an inmate which are authorized to be retained, within limits as posted in the unit/center of assignment, on an inmate's person, or in living or storage area." (Id. at 108).   AD 20-08 defines inmate personal property as "all items of approved property belonging to an inmate." (Id. at 102).   As an initial matter, the Court notes that nothing in these definitions would exclude legal material, defined by AD 20-08 as "pleadings and resource documents such as case law, court rules, statues, transcripts, notes, or legal forms." (Id. at 102).   Plaintiff alleges the limitation on

the amount of material he is allowed to have in his area impeded his ability to access the courts. But again, Plaintiff has not established actual injury.   As a result, this claim fails.

### D.    Due Process

Plaintiff alleged violation of his due process rights, but did not provide sufficient detail in support of his claim.   Any § 1983 due process claim related to the taking of Plaintiff's property fails because Plaintiff has an adequate state remedy by way of an action for conversion, for example.   Hudson v. Palmer, 468 U.S. 517, 533 (1984); Butler v. Smith, 208 F.3d 217 (8th Cir. 2000) (unpublished); Hartness v. Nuckles, 2015 Ark. 444, 9 (2015) (internal citations omitted).

### E.    Failure to Supervise

Plaintiff alleged Defendant Profiri failed to supervise his subordinates.   Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employees' allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).

Here, Plaintiff has not established an underlying violation.   As such, his failure to supervise claim fails.

### F.    State Law Claims

This Court may decline to exercise supplemental jurisdiction over state law claims if no live federal claims remain in this case.   28 U.S.C. § 1367.   "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point towards declining to exercise jurisdiction over the remaining state-law claims.'"   King v. City of Crestwood, Missouri, 899 F.3d 643, 651 (8th Cir.

2018) (internal citation omitted).    Having already determined that Plaintiff's federal claims should be dismissed, the Court should decline to retain jurisdiction over Plaintiff's state-law claims.

IV.    **Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1.    Plaintiff's federal claims be DISMISSED without prejudice.

2.    The Court decline to exercise jurisdiction over Plaintiff's state law claims.

3.    This action be DISMISSED.

4.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 8th day of September, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE